UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SCARLET ROSARIO, As Mother and Natural Guardian of V.R., A Minor, and SCARLET ROSARIO, Individually,

Plaintiffs,

25-cv-8387 (PKC) (SLC)

-against-

ORDER ADOPTING REPORT AND RECOMMENDATION

THE METAL WARE CORPORATION,

Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

This action was brought by the mother of a minor son on her own behalf and on her son's behalf (collectively, "plaintiffs") for serious burns he suffered. While the son was seated in a barber's chair, the handle of a kettle, manufactured and sold by the sole defendant The Metal Ware Corporation ("Metal Ware"), allegedly broke causing boiling water to spill over the child causing serious physical and emotional injuries. Separately, plaintiffs sued the barber and the barber shop in an action still pending in New York Supreme Court, Bronx County (the "Bronx Action").[1]

Metal Ware moved to enforce a purported settlement with plaintiffs (ECF 20), and this Court referred the matter to Magistrate Judge Sarah L. Cave for a report and recommendation. (ECF 21.)

---

[1] Scarlet Rosario, As Mother and Natural Guardian of V.M.M.R., et al. v. Blas Y. Diaz a/k/a Ysrael B. Diaz, Taglio Barber Shop Inc., et al., Supreme Court, Bronx County, Index No. 812305/2023E ("Bronx Action").

Magistrate Judge Cave's Report and Recommendation ("R&R") (ECF 27) concludes that the parties intended to be bound by their preliminary agreement reflected in their correspondence of April 9-10, 2026, pursuant to which Metal Ware would pay plaintiffs $350,000 in exchange for the release of the claims in this action, a hold harmless provision with respect to the Bronx Action, and a stipulation of dismissal. The R&R further concludes that any unresolved issues about the wording of the hold harmless provision or any confidentiality provision did not negate the existence of a binding agreement. Even so, the R&R recommends that the enforcement of the settlement be denied because (1) there has not been an infant compromise hearing, as contemplated by Local Civil Rule 83.2 and New York law, and (2) the hold harmless provision would violate New York public policy.

Metal Ware objects to so much of the R&R as concluded that the settlement could not be enforced without an infant compromise hearing and that the hold harmless provision violated New York public policy. It does not object to the R&R's conclusion that there was a binding preliminary agreement. Plaintiffs do not object to the R&R's ultimate conclusion that the settlement may not be enforced because of the absence of an infant compromise hearing and the existence and terms of the hold harmless provision. But Plaintiffs object to so much of the R&R that concludes that there was a binding agreement between plaintiffs and Metal Ware. (ECF 29 at 2.)

Upon de novo review,[2] the Court adopts the R&R without modification.

---

[2] Rule 72(b)(2) & (3), Fed. R. Civ. P.

The Binding Nature of the Preliminary Agreement

The R&R correctly analyzes the content of and facts surrounding the April 9-10, 2026 exchange. The April 9 email from Metal Ware's counsel purported to confirm the oral understandings reached by counsel for the parties:

> Hi Steve,
>
> This is to confirm we are settled at $350,000 for a release of all claims with standard global releases and hold harmless, and stipulation of dismissal.
>
> The releases will expressly not include a release of the other lawsuit against Taglio Barbershop et al pending in New York Supreme Court Bronx, nor of any parties to that action, but will include indemnity and hold harmless of my client against any claims brought by those defendants if ever in the future.
>
> Please respond confirming to bind the settlement.
>
> We will get the check requested and draft releases to send you.
>
> Great working with you and Joe!
>
> Larry Green

(ECF 20-3 at 2–3.)

Plaintiffs' attorney responded as follows on April 10:

> Confirmed. Thank you, Larry.
>
> Pleasure working with you.
>
> Have a great weekend.
>
> Steve

(Id. at 2.)

The R&R's analysis does not confine itself to the foregoing email exchange. It also examines the context of the negotiations and the emails in the days leading up to the

exchange, the purportedly open terms, and the absence of partial performance by Metal Ware. It correctly considers the application of the factors in Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985), Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69 (2d Cir. 1989), and other authorities.

The Court agrees that there was an agreement that bound the parties. Whether that agreement was immediately enforceable is a different issue.

## The Absence of an Infant Compromise Proceeding

The R&R concludes that the settlement should not be enforced because of a Local Civil Rule in this District providing that "[a]n action by or on behalf of an infant . . . must not be settled or compromised, or voluntarily discontinued, dismissed, or terminated without leave of the court, embodied in an order, judgment or decree." Local Civil Rule 83.2. Unless cause is shown, the approval "proceeding" "must conform, as much as possible," to procedures in New York state court. (Id.); see N.Y. CPLR §§1207-1208. New York courts view the judicial approval process as necessary to the enforceability of settlement as against the infant. See Valdimer v. Mount Vernon Hebrew Camps, 9 N.Y.2d 21, 24 (1961).

Metal Ware does not object to the concept of Court approval, but it views the need for strict compliance with state procedures unnecessary in this case. See, e.g., Neilson v. Colgate-Palmolive Co., 199 F.3d 642 (2d Cir. 1999) ("Rule 83.2 is hardly a rigid obligation imposed on district courts.")

But the procedures under sections 1207 and 1208 of New York's CPLR are designed to uncover useful information that a Court generally ought to consider in deciding whether to approve a settlement with an infant. For example, in a compromise of a damage

claim for personal injury to an infant, "one or more medical or hospital reports, which need not be verified, shall be included in the supporting papers." N.Y. CPLR § 1208(b)(3)(c). The attorney representing the infant must file an affidavit that he or she has no interest adverse to the infant nor will receive compensation from any other person. Id. § 1208(b)(2). Rule 83.2 also provides that the Court must order "the [net] balance of the proceeds of the recovery or settlement to be distributed as it deems may best protect the interest of the infant." There are no principled reasons why this Court should dispense with these protections. The information is not otherwise discernable from the record.

The R&R correctly concluded that the settlement could not be enforced absent substantial compliance with Local Civil Rule 83.2.

The Enforceability of the Indemnity Provision

As reflected in the April 9 email, Metal Ware insisted upon a hold harmless agreement against any claims by the barber or the barber shop against Metal Ware in the Bronx Action. In simple terms, under the April 9-10 exchange, plaintiffs would retain the right to continue the action against the barber and barber shop. But, in the event the barber or barber shop sought to impose liability for plaintiffs' injuries on Metal Ware, Metal Ware could, in turn, recover against plaintiffs. Outside the realm of an infant compromise, it is reasonable and economically rational for a defendant to seek such a provision, since it reduces the risk of paying a double recovery for the same incident. Indeed, as Metal Ware argues, a prohibition on indemnity may lead to smaller monetary settlements for the infants. (ECF 30 at 10.)

But in Valdimer v. Mount Vernon Hebrew Camps, 9 N.Y.2d at 23, the question framed by the New York Court of Appeals was "whether an indemnity agreement, contained in a

general release given by the parent in settlement of an infant's claim, is unenforcible as a matter of public policy." The Court answered the question in the affirmative. Id. at 24 (noting that two other states had answered in the affirmative, and "[w]e reach the same conclusion").[3] Neither the parties, the R&R, nor this Court have located any New York appellate court authority calling Valdimer into question or narrowing its scope. It appears to remain good law binding in a case that invokes this Court's diversity jurisdiction.

The indemnification provision contemplated by the April 9-10 agreement would include an indemnity by the parent, as was the case in Valdimer, and also by the infant. Just as the Valdimer indemnification provision was held unenforceable as a violation of public policy, the indemnification provision here is unenforceable as well. Thus, the Court adopts the R&R's conclusion that the indemnification provision violates New York's public policy.

CONCLUSION

Having considered the R&R de novo in light of the objections of the parties, the R&R is ADOPTED without modification and the motion to enforce the settlement (ECF 20) is DENIED.

---

[3] In Valdimer, the indemnity ran from the parent to the putative tort-feasor, just as it does here. But, unlike the present case, the agreement did not include an indemnification by the infant. Nevertheless, it was condemned as violative of New York public policy: "it follows that to allow a tort-feasor to extract a promise of indemnification from the parent of the injured child is effectively to frustrate the purpose of requiring judicial approval to give binding effect to settlement agreements. Clearly, a parent who has placed himself in the position of indemnitor will be a dubious champion of his infant child's rights." Id. at 25. The Valdimer settlement, including the condemned indemnity provision, was reached pre-suit in exchange for payment of $400.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 13, 2026